LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

MARIA MORERIA, OFELIA MARTINEZ, DENISE
MORINI, CHAZ-ELLIOT PROUT,
*on behalf of themselves,*
*FLSA Collective Plaintiffs,*                          Case No:
*and the Class,*

                  Plaintiffs,

                                                   **CLASS AND**
                                                   **COLLECTIVE**
                    v.                          **ACTION COMPLAINT**

COMMUNITY OPTIONS, INC., and
COMMUNITY OPTIONS NEW YORK, INC.,

                  Defendants.

_____

      Plaintiffs, MARIA MORERIA, OFELIA MARTINEZ, DENISE, MORINI, CHAZ-ELLIOT PROUT ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, COMMUNITY OPTIONS, INC., COMMUNITY OPTIONS NEW YORK, INC. (the "Defendants") and states as follows:

**INTRODUCTION**

1.      Plaintiffs allege that, pursuant to the Federal Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) compensation for unpaid off-the-clock work, including unpaid overtime premium, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      A subclass of employees, represented by Plaintiff OFELIA MARTINEZ, were employed through agreements with Defendants.  This subclass of employees ("Subclass Members") claims includes both the allegations of non-subclass members and the following: (1) breach of contract, (2) failure to pay overtime due to misclassification, (3) unjust enrichment, (4) breach of implied good faith and fair dealing, and (5) promissory estoppel.

3.      The Subclass Members signed employment agreements with Defendants fixing hours they were scheduled to work, usually forty (40).  The Subclass Members were paid at a fixed rate for exactly a forty (40) hour workweek, but worked more hours than their contracted schedules, which went uncompensated.  They and others similarly situated are entitled to compensation for hours worked above and beyond their scheduled hours listed in their employment agreements.

4.      Specifically, the Subclass Members allege the following: (1) that Defendants' policy of misclassifying the Subclass Members as exempt employees and refusing to pay overtime for hours worked in excess of 40 per workweek, (2) that Defendants unjustly enriched themselves from the uncompensated labor of Subclass Members, (3) that Defendants breached the implied covenant of good faith and fair dealing when they failed to maintain work schedules contractually agreed pursuant to NYLL §167 and 12 N.Y.C.R.R. 177, that, and (4) Defendants

engaged in promissory fraud by falsely promising employees compensation for a purported fixed schedule to induce employees to employment agreements.

5.      Additionally, Plaintiff MARIA MORERIA alleges an individual claim, pursuant to New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that she was deprived of her statutory rights as a result of Defendants' discriminatory employment practices and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

6.      Plaintiff OFELIA MARTINEZ alleges an individual claim pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq, in that she was denied an opportunity for leave to take care of her illness, and was retaliated against rather than offered leave to address her medical issues. Plaintiff seeks all applicable remedies under the law, including (1) compensatory damages, (2) punitive damages, (3) back pay, (4) front pay, and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

8.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

9.      Plaintiff, MARIA MORERIA ("Plaintiff MORERIA"), for all relevant time periods, was a resident of Westchester County, New York.

10. Plaintiff OFELIA MARTINEZ, ("Plaintiff MARTINEZ") for all relevant time periods, was a resident of Onondaga County, New York.

11. Plaintiff DENISE MORINI, ("Plaintiff MORINI") for all relevant time periods, was a resident of Onondaga County, New York.

12. Plaintiff CHAZ-ELLIOT PROUT, ("Plaintiff PROUT") for all relevant time periods, was a resident of Onondaga County, New York.

13. Corporate Defendant, COMMUNITY OPTIONS, INC., is a foreign business corporation organized under the laws of New Jersey, with a principal place of business at 16 Farber Road, Princeton, NJ 08540 and address for service of process located at Community Options, Inc., Att: Robert Stack, 15 Thompson Street, Bordentown, NJ 08505. Corporate Defendant COMMUNITY OPTIONS, INC. is a parent company, which wholly owns and operates, Corporate Defendant COMMUNITY OPTIONS NEW YORK, INC.

14. Corporate Defendant, COMMUNITY OPTIONS NEW YORK, INC., is a domestic business corporation organized under the laws of New York, with a principal place of business and address for service of process located at Community Options New York, Inc., Suite 210, 45 John Street, New York, NY 10038.

15. Defendants own and operate nonprofit corporations that provide housing, employment services, and specialized assistance for people with disabilities nationwide, including in New York with regional offices at the following locations:

    a) 161–165 Woodruff Ave., Brooklyn, NY 11226 ("Brooklyn Office");

    b) 350 Fifth Ave., Suite 5230, New York, NY 10118 ("Manhattan Office");

    c) 4301 Bell Blvd., Bayside, NY 11316 ("Queens Office");

    d) 182- 184 State St., Binghamton, NY 13901 ("Binghamton Office");

e) 601 Gates Rd., Vestal, NY 13850 ("Vestal Office");

f) 345 Broad St., Waverly NY 14892 ("Waverly Office"); and

g) 216 W. Manlius St., East Syracuse, NY 13057 ("Syracuse Office" collectively with the Brooklyn Office, Manhattan Office, Queens Office, Binghamton Office, Vestal Office, and Waverly Office the "New York Locations").

16. Further, Corporate Defendants employ over 5,000 individuals on a national basis, all of whom are managed through Defendants' sixty-nine (69) branch offices located in nine states. Corporate Defendants have the following number of branch offices located in Arizona (2), Maryland (3), New Jersey (18), New Mexico (3), New York (7), Pennsylvania (18), South Carolina (4), Tennessee (5), Texas (7), Utah (2) (collectively the "Locations"). See attached **Exhibit A**, Community Options Office Locations advertised on their centralized website. Plaintiffs seek to represent Class Members from all these States.

17. The Defendants, a nationally based not-for-profit operate sixty-nine (69) branch offices with a mission to develop housing and employment supports for people in need. Defendants operate their business and sixty-nine branch offices, as a single integrated enterprise. Specifically, the various Locations of Defendants are engaged in related activities, share common ownership, and have a common business purpose:

a) Attached hereto as **Exhibit A** are screenshots taken from Defendants' Webpage, https://www.comop.org/, which Corporate Defendants share.

b) Individual Defendant Robert Stack owns and manages Corporate Defendants jointly.

c) The Locations regularly share and exchange non-exempt employees, who are interchangeable among the Locations.  Plaintiff was regularly moved and/or worked at different locations during her employment with Defendants.

d) Defendants require employees to work at locations different from their primary place of employment on a regular basis. Defendants, on occasion, transfer employees between Locations based on their own business needs.

e) Corporate Defendant, COMMUNITY OPTIONS NEW YORK, INC directly owns and operates all New York Locations.

f) All the Locations are owned and operated by the COMMUNITY OPTIONS, INC. Specifically, "Community Options works with individuals with significant disabilities through residential services, day programs, social enterprises that employ individuals with disabilities, high school transition programs, and specialized programs for respite and medically fragile adults. As a national agency, Community Options seeks to promote the inclusion of people with disabilities in the community through person centered and natural supports, and collaboration with community partners to increase accessibility to services." *See* **Exhibit C.**

g) All the Locations use a central marketing department and share a Twitter, Facebook, and Instagram page.  *See* **Exhibit B**.

h) All the Locations share an executive management staff.  *See* **Exhibit D**.

i) All the Locations share a common career page, which lists all available positions regardless of State or location, for which the position is available. *See* **Exhibit E**.

j)  Employees were regularly required to transport items between Locations, in accordance with the directives of central management.

k)  Prior to opening, a new location within a state, such a decision must be approved by Defendant COMMUNITY OPTIONS, INC.

l)  Defendants holds itself out as being one large company with local offices, such as the New York Locations, located throughout the country in advertisements and on its websites contact us page.  *See* **Exhibit F**.

m)  All the Locations share the same brand name with the same logo of the parent company (Defendant COMMUNITY OPTIONS, INC.) and are marketed jointly. *See* **Exhibit A**, which features a joint advertisement, and pictures of offices throughout the country marketing themselves as Community Options Inc.

n)  All the Locations share a common "Donate" link on the Website, where all the donations are pooled to parent corporation. *See* **Exhibit G** for the "Donate" webpage on the Website.

18.   At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

19.   At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## NATIONWIDE - FLSA COLLECTIVE ACTION ALLEGATIONS

20.   Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees employed by Defendants including all nurses, all non-exempt employees engaged in behavioral or direct support services such as direct support professionals, employment specialists, behavioral support

aides, behavioral specialists, and behavioral technicians, at all Locations nationwide on or after the date that is six years before the filing of the Complaint ("FLSA Collective Plaintiffs").

21.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime premium at one and one half times their straight time base hourly rates for each hour worked in excess of forty (40) per workweek due to a policy of time shaving. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

22.     Moreover, nationwide FLSA Collective Plaintiffs also comprise those who suffered from Defendants' policy of misclassifying the Subclass as exempt employees and refusing to pay them their overtime premium for all of the hours worked in excess of 40 per workweek.

23.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS**

24.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees employed by Defendants including all nurses, all non-exempt employees engaged in behavioral or direct

support services such as direct support professional, employment specialists, behavioral support aides, behavioral specialists, and behavioral technicians, at all Locations nationwide on or after the date that is six years before the filing of the Complaint (the "Class Period").

25.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of contracted employees who also number more than forty (40). Plaintiff, OFELIA MARTINEZ is a member of both the Class and the Subclass.

27.    Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, including (i) failing to pay overtime premium due to a policy of time shaving, (ii) failing to provide wage statements in compliance with the NYLL, and (iii) failing to provide wage and hour notices upon hiring and as required thereafter, pursuant to the NYLL.

28.     With regards to Plaintiff OFELIA MARTINEZ, and the Subclass, Defendants' also failed to pay them proper overtime due to Defendants' policy and practice. Plaintiff OFELIA MARTINEZ and Subclass Members were falsely promised and contracted to work a specified the hours each week.  Defendants required Subclass Members to work well beyond their scheduled hours without providing any overtime compensation.

29.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.     Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

31.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will

be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32.    Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

33.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a)  Whether Defendants employed Plaintiffs, Class Members and Subclass Members;

    b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs, Class Members, and Subclass Members properly;

c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs, Class Members, and Subclass Members for their work;

d)  Whether Defendants breached their employees' contracts regarding the specified hours worked.

e)  Whether Defendants' employees' contracts include expected work schedules, which were ignored by Defendants as they required employees to work well beyond their scheduled times.

f)  Whether Defendants properly notified Plaintiff, Class Members, and Subclass Members of their hourly rate and overtime rate;

g)  Whether Defendants paid Plaintiff, Class Members and Subclass Members overtime premium at one-and-one-half times their straight time base hourly rates for all hours worked in excess of forty (40) each workweek;

h)  Whether Defendants paid Plaintiff, Class Members, and Subclass Members for all hours worked;

i)  Whether Defendants provided to Plaintiff, Class Members, and Subclass Members proper wage and hour notices at date of hiring; and

j)  Whether Defendants provided to Plaintiff, Class Members, and Subclass Members proper wage statements with each payment of wages.

## **STATEMENT OF FACTS**

### *Maria Moreria Wage and Hour Claim*

34.    In or around December 2017, Plaintiff MORERIA was hired by Defendants to work as a licensed practical nurse for Defendants' Group Home located at 228-19 114th Drive,

Queens, NY 11411. Plaintiff MORERIA also worked at 55-35 260th Street, Little Neck, NY 11362. Plaintiff's employment by Defendants terminated on June 28, 2019.

35.    During her employment by Defendants, Plaintiff MORERIA frequently worked over forty (40) hours per week. Plaintiff worked a varied schedule for four (4) days per week.

36.    From the start of Plaintiff MORERIA's employment until June 2018, Plaintiff MORERIA received a base hourly rate of $26.00. From January 2018 to the termination of Plaintiff MORERIA's employment, Plaintiff MORERIA received a base hourly rate of $27.00.

37.    Plaintiff was scheduled to work a forty (40) workweek by Defendants.  Plaintiff frequently worked a total of more than forty (40) hours each workweek. However, Defendants did not pay her all of her overtime premium for those hours she worked in excess of forty (40) each workweek, due to a policy of time shaving.  Similarly, FLSA Collective Plaintiffs, Class Members, and Subclass Members were not paid all of their overtime premium for hours that they worked in excess of forty (40) each workweek.

38.    Throughout Plaintiff MORERIA's employment with Defendants, Plaintiff MORERIA would work from Defendants' offices located at 22819 114th Drive, Cambria Heights, and also another of Defendants' offices located at 55-35 260th Street, Little Neck NY. Additionally, Plaintiff was asked to do considerable work from home.  Travel time between business locations were uncompensated.

39.    When Plaintiff MORERIA worked at Defendants' offices, Defendants would frequently wait for Plaintiff MORERIA to clock-out-to leave, only to require that Plaintiff MORERIA continue working for thirty minutes to an hour on new emergent issues.  Plaintiff MORERIA would be required to continue working past her shift, after being clocked-out about four (4) times a week.

40.     Additionally, when Plaintiff MORERIA was required to continue working when home.  Plaintiff worked an additional five (5) uncompensated hours a week taking calls from doctors, clients, and writing the appropriate follow-up after such discussions from home.

41.     As a result, Plaintiff MORERIA suffered from seven (7) to nine (9) hours of uncompensated work per week. During weeks in which Plaintiff's work hours exceeded forty (40) hours per week, such time should have been compensated at an overtime premium.

42.     Similarly, FLSA Collective Plaintiffs, Class Members, and Subclass Members sustained substantial off-the-clock work for which they were never compensated, including post shift work, travel time, and work from home time.

43.     Defendants never provided Plaintiff with wage notices, as required by the NYLL. Similarly, FLSA Collective Plaintiffs, Class Members, and Subclass Members were never provided with any wage notices.

44.     Defendants did not provide Plaintiff with proper wage statements at all relevant times. Class members also received defective wage statements that did not comply with the NYLL.

45.     Plaintiffs, FLSA Collective Plaintiffs, Class members, and Subclass Members were required by Defendants to perform unpaid off-the-clock work, resulting in unpaid wages and overtime premium.

### *Maria Moreria - Discrimination Claim*

46.     Beginning in 2018, with the hiring of her new manager Maria Bowles, Plaintiff MORERIA experienced discrimination because she was Caucasian.

47.     Specifically, beginning with the hiring of her manager Maria Bowles, Defendants let foster an atmosphere of discrimination.  Plaintiff MORERIA's manager would frequently

make discriminatory comments to Plaintiff MORERIA.  Such comments included: "You vote for Trump because you are white," and "You're like this because you're white."

48.     Another Manager of Defendants, [FNU] Kiwani, would bully Plaintiff MORERIA and create false rumors that Plaintiff was "giving soda to patients," and that Plaintiff MORERIA "wants to kiss patients."   No remedial measures were taken even after Plaintiff MORERIA complaint to HR regarding the harassment.

49.     Most egregiously, Manager Maria Bowles and Defendants unlawfully targeted Plaintiff MORERIA for termination due to her race.  Plaintiff MORERIA fired due to her race and was replaced with African American employees.

### Chaz-Elliot Prout – Wage and Hour Allegations

50.     In or around September 2019, Plaintiff PROUT was hired by Defendants to work as a Direct Service Professional for Defendants' Group Home located on Woodroof Avenue in Brooklyn. Plaintiff PROUT's employment by Defendants terminated on April of 2020.

51.     During his employment by Defendants, Plaintiff PROUT worked over forty (40) hours per week.

52.     From the start of Plaintiff PROUT's employment until his termination, Plaintiff PROUT received a base hourly rate of $15.00.

53.     Plaintiff PROUT frequently worked a total of more than forty (40) hours each workweek. However, Defendants did not pay him all of his overtime premium for those hours he worked in excess of forty (40) each workweek, due to a policy of time shaving.  Similarly, FLSA Collective Plaintiffs and Class Members were not paid all of their overtime premium for hours that they worked in excess of forty (40) each workweek.

54.     Moreover, Plaintiff PROUT was required to come in 1 hour earlier than his scheduled shift approximately 1-2 times per month.  On these days that he came in early, his time was uncompensated as Defendants would only compensate him for his scheduled time.

55.     Additionally, Defendants would automatically deduct time for lunch each day, but would require Plaintiff PROUT to work through lunch.

56.     As a result, Plaintiff suffered from an hour of uncompensated work per week. During weeks in which Plaintiff's work hours exceeded forty (40) hours per week, such time should have been compensated at an overtime premium.

57.     Similarly, FLSA Collective Plaintiffs, Class Members, and Subclass Members sustained substantial off-the-clock work for which they were never compensated.

58.     Defendants never provided Plaintiff with wage notices, as required by the NYLL. Similarly, FLSA Collective Plaintiffs, Class Members, and Subclass Members were never provided with any wage notices.

59.     Defendants did not provide Plaintiff with proper wage statements at all relevant times. Class members and Subclass Members also received defective wage statements that did not comply with the NYLL.

60.     Plaintiff, FLSA Collective Plaintiffs, Class members, and Subclass Members were required by Defendants to perform unpaid off-the-clock work, resulting in unpaid wages and overtime premium.

### *Denise Morini – Wage and Hour Allegations*

61.     In or around October 9, 2017, Plaintiff MORINI was hired by Defendants to work as a Behavior Specialist at Defendants' Syracuse Office located at 216 West Manlius Street, East Syracuse, NY 13057. Plaintiff's employment by Defendants terminated on November 24, 2020.

16

62.    During her employment by Defendants, Plaintiff MORINI was scheduled to work over forty (40) hours per week. Plaintiff was scheduled to work five (5) days per week starting at 8:30 am and ending at 4:40 pm. In reality, Plaintiff MORINI was expected to work nights and weekends from home.  Plaintiff MORINI was expected to take calls from doctors, co-workers, clients, and others, as well as fill out all necessary paperwork, in Plaintiff MORINI's supposedly off hours.  Due to Defendants policy of requiring at home work, Plaintiff MORINI worked significant overtime, which was not compensated.  Plaintiff MORINI worked an additional ten (10) hours a week, which went uncompensated by Defendants.

63.    At the start of Plaintiff MORINI's employment she earned a salary of $45,000 for the year, and was not compensated for any of her overtime hours.  In or about 2019, Plaintiff MORINI began receiving a base hourly rate of $23.00, but Plaintiff was still not compensated for these hours spend at home working for Defendants.

64.    Plaintiff MORINI frequently worked a total of more than forty (40) hours each workweek. However, Defendants did not pay her all of her overtime premium for those hours she worked in excess of forty (40) each workweek, due to a policy of time shaving.  Similarly, FLSA Collective Plaintiffs, Class Members, and Subclass Members were not paid all of their overtime premium for hours that they worked in excess of forty (40) each workweek.

65.    Moreover, Plaintiff MORINI was required to work up to 10 additional hours each week, which went uncompensated.

66.    As a result, Plaintiff MORINI suffered from substantial uncompensated work per week. During weeks in which Plaintiff's work hours exceeded forty (40) hours per week, such time should have been compensated at an overtime premium.

67.     Similarly, FLSA Collective Plaintiffs, Class Members, and Subclass Members sustained substantial off-the-clock work for which they were never compensated.

68.     Defendants never provided Plaintiff with wage notices, as required by the NYLL. Similarly, FLSA Collective Plaintiffs, Class Members, and Subclass Members were never provided with any wage notices.

69.     Defendants did not provide Plaintiff with proper wage statements at all relevant times. Class members and Subclass Members also received defective wage statements that did not comply with the NYLL.

70.     Plaintiff, FLSA Collective Plaintiffs, Class members, and Subclass Members were required by Defendants to perform unpaid off-the-clock work, resulting in unpaid wages and overtime premium.

*Ofelia Martinez – Wage and Hour Allegations*

71.     In or around November 25, 2019, Plaintiff MARTINEZ was hired by Defendants to work as a Registered Nurse at Defendants' Syracuse Office located at 216 West Manlius Street, East Syracuse, NY 13057. Plaintiff's employment by Defendants terminated on January 11, 2021.

72.     Before Plaintiff MARTINEZ started her employment Defendants requested that she sign an employment contract.  Plaintiff MARTINEZ's contract detailed the conditions of her employment including her scheduled hours worked.  In accordance with Plaintiff's contract, Plaintiff was scheduled to work forty (40) hours a week.

73.     At the time of Plaintiff MARTINEZ's signing of that employment agreement, Defendants were aware that Plaintiff's scheduled hours would not reflect the hours Plaintiff MARTINEZ would be required to work.  Defendants included the scheduled hours of forty (40)

hours a week, a figure much less than the hours Plaintiff MARTINEZ would be required to work, to induce her agreement to the contract.

74.     Similarly, Subclass Members contracts included weekly scheduled indicating Subclass Members would only be required to work forty (40) hours a week, similarly to Plaintiff MARTINEZ, Subclass Members were required to work in addition to forty (40) hours per week without compensation.

75.     During her employment by Defendants, Plaintiff MARTINEZ's schedule indicated that she was to work over forty (40) hours per week. Plaintiff was scheduled to work five (5) days per week starting at 8:00 am and ending at 4:00 pm.

76.     From the start of Plaintiff's employment until October of 2020, Plaintiff earned an hourly rate of $28.00 an hour.  After October of 2020, Plaintiff earned an hourly rate of $29.71 an hour.

77.     Plaintiff frequently worked a total of more than forty (40) hours each workweek. However, Defendants did not pay her all of her overtime premium for those hours worked in excess of forty (40) each workweek, due to a policy of time shaving.  Similarly, FLSA Collective Plaintiffs, Class Members, and Subclass Members were not paid all of their overtime premium for hours that they worked in excess of forty (40) each workweek.

78.     Plaintiff MATINEZ was required to work an additional 4 hours each day, which went uncompensated.  Plaintiff was required to be on call between the hours of 4:00 pm and 6:00 pm.  Moreover, Plaintiff's workload was such that it required her to work in additional 2 hours to both her regular schedule time and her on-call time each day.  Plaintiff was not compensated for time outside her scheduled hours.

79.     As a result, Plaintiff suffered from substantial uncompensated work per week. During weeks in which Plaintiff's work hours exceeded forty (40) hours per week, such time should have been compensated at an overtime premium.

80.     Similarly, FLSA Collective Plaintiffs and Class Members sustained substantial off-the-clock work for which they were never compensated.

81.     Defendants never provided Plaintiff with wage notices, as required by the NYLL. Similarly, FLSA Collective Plaintiffs and Class Members were never provided with any wage notices.

82.     Defendants did not provide Plaintiff with proper wage statements at all relevant times. Class members also received defective wage statements that did not comply with the NYLL.

83.     Plaintiff, FLSA Collective Plaintiffs, and Class members were required by Defendants to perform unpaid off-the-clock work, resulting in unpaid wages and overtime premium.

### *Ofelia Martinez – Family Medical Leave Act*

84.     On January 11, 2021, Plaintiff Ofelia Martinez was terminated from her job with Defendants due to her use of sick leave.

85.     Before terminating her employment, and at no point while Plaintiff was using sick leave, did Defendants offer, or inform, Plaintiff of her rights under the Family Medical Leave Act.

86.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF**

**PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS**

87.     Plaintiffs reallege and reaver Paragraphs 1 through 86 of this class and collective action Complaint as if fully set forth herein.

88.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

89.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

90.      At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.00.

91.     At all relevant times, Defendants engaged in a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for all of their hours worked in excess of forty (40) hours per workweek, due to a policy of time shaving.

92.     Records concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if

necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

93.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

94.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

95.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premium, and an equal amount as liquidated damages.

96.    Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

97.    Plaintiffs reallege and reaver Paragraphs 1 through 96 of this class and collective action Complaint as if fully set forth herein.

98.    At all relevant times, Plaintiffs, Class Members, and Subclass Members were employed by the Defendants within the meaning of the NYLL, §§2 and 651.

99.    Defendants willfully violated Plaintiffs, Class Members, and Subclass Members' rights by refusing to compensate them for off-the-clock hours during which they were required to work, including overtime hours.

100.    Defendants failed to properly notify employees of their hourly pay rate and

overtime rate, in direct violation of the NYLL.

101.     Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the NYLL.

102.     Defendants failed to provide proper wage statements with every payment as required by NYLL § 195(3).

103.     Due to the Defendants' NYLL violations, Plaintiffs, Class Members, and Subclass Members are entitled to recover from Defendants their unpaid compensation for unpaid off-the-clock hours worked including overtime hours, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action.

**COUNT III**

**CLASS ALLEGATIONS – BREACH OF CONTRACT**

104.     Plaintiff MARTINEZ on behalf of herself and the Subclass Members realleges and reavers Paragraphs 1 through 103 of this class and collective action Complaint as if fully set forth herein.

105.     Plaintiff Martinez brings this class action on behalf of, inter alia, all persons who were or are employed as exempt-salaried employees by Defendants, including salaried Registered Nurses.  Such employees were subject to written employment agreements, which stated their annual base salary and that their expected hours per week would be 40 hours per week. The employment agreements stated they would not be expected to work overtime.

106.     For each employee their salary was broken down into an hourly wage. For example, Plaintiff Martinez was paid $17.36 per hour, on her earnings statements.

107.    The Breach of Contract Class Members fully performed their obligations under the Agreements.

108.    Despite the Breach of Contract Class Members fully performing their obligations under the Agreements, Defendants breached their agreements by requiring their employees to work more than their agreed upon hours without compensation.

## COUNT IV

### CLASS ALLEGATIONS - BREACH OF GOOD FAITH AND FAIR DEALING

109.    Plaintiff MARTINEZ realleges and reavers Paragraphs 1 through 108 of this class and collective action Complaint as if fully set forth herein.

110.    Plaintiff MATINEZ on behalf of herself and Subclass Members alleges that at all times material hereto, Plaintiff and the Breach of Contract Class Members performed fully their contractual obligations, namely—to working for Defendants pursuant to their agreements.

111.    Defendants unfairly interfered with Plaintiff MARTINEZ and the Subclass Members' rights under the contract by requiring work well beyond those stipulated and expected under the agreement.

112.    As a direct and proximate result of SOC's failure to act fairly and in good faith, Plaintiff and the Breach of Contract Class Members have sustained damages in an amount according to proof at trial.

## COUNT V

### CLASS ALLEGATIONS - PROMMISSORY FRAUD

113.    Plaintiff MARTINEZ realleges and reavers Paragraphs 1 through 112 of this class and collective action Complaint as if fully set forth herein.

114.    In order to induce Plaintiff MARTINEZ and the Subclass Members to accept employment with them, Defendants affirmatively promised Plaintiff and the Subclass Members: that they would work an expected schedule.

115.    Defendants' representations as set forth above were false and fraudulent, the Defendants knew that the representations were false and fraudulent at the time they were made, and Defendants did not intend to honor these representations.

116.    Plaintiff MARTINEZ and the Subclass Members were not aware of the falsity of Defendants' representations, and reasonably and actually relied on them in accepting employment with the Defendants.

117.    As a direct and proximate result of Defendants' false and fraudulent misrepresentations, Plaintiff MARTINEZ and the Subclass Members have sustained damages in an amount according to proof at trial.

118.    Plaintiff MARTINEZ and the Subclass Members are informed and believe, and on that basis allege, that Defendants false and fraudulent misrepresentations were done with fraud and malice and in conscious disregard of Plaintiff and the Subclass Members rights.

119.    Plaintiff and the Subclass Members are therefore entitled to an award of punitive damages against Defendants.

## COUNT VI

## CLASS ALLEGATIONS - NEGLIGENT MISREPRESENTATION

120.    Plaintiff MARTINEZ realleges and reavers Paragraphs 1 through 119 of this class and collective action Complaint as if fully set forth herein.

121.     In order to induce Plaintiff MARTINEZ and the Subclass Members to accept employment with them, Defendants affirmatively promised Plaintiff and the Subclass Members: that they would work an expected schedule.

122.     Defendants' representations as set forth above were false, were false at the time the agreements were made, and Defendants made these misrepresentations without reasonable ground for believing them to be true when made.

123.     Plaintiff MARTINEZ and the Subclass Members were not aware of the falsity of Defendants' representations, and reasonably and actually relied on them in accepting employment with the Defendants.

124.     As a direct and proximate result of Defendants' false misrepresentations, Plaintiff MARTINEZ and the Subclass Members have sustained damages in an amount according to proof at trial.

**COUNT VII**

**<u>CLASS ALLEGATIONS - UNJUST ENRICHMENT</u>**

125.     Plaintiff MARTINEZ on behalf of herself and the Subclass Members realleges and reavers Paragraphs 1 through 124 of this class and collective action Complaint as if fully set forth herein.

126.     By virtue of Defendants' conduct as alleged herein, and Plaintiff's and the Subclass Members' performance of their obligations to employees, Defendants were unjustly enriched by the Plaintiff and the Subclass Members' conduct and did not compensate Plaintiff or the Subclass Members fully.

127.    The circumstances are such that it would be inequitable to allow Defendants to retain the excess benefit from Plaintiff and Subclass Members conduct without paying fair value for it.

128.    As a direct and proximate result of Defendants wrongful withholding of funds collected that should have been paid to Plaintiff and the Subclass Members, Plaintiff and the Subclass Members have sustained damages in an amount according to proof at trial.

129.    Defendants' withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiff and the Subclass Members rights, with the intent to cause injury to Plaintiff and the Subclass Members. Plaintiff and the Subclass Members are therefore entitled to an award of punitive damages against Defendants.

## COUNT VII

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

## (NEW YORK EXECUTIVE LAW § 296)

130.    Plaintiff MORINI realleges and reavers Paragraphs 1 through 129 of this class and collective action Complaint as if fully set forth herein.

131.    Plaintiff is an employee and a qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

132.    Defendants violated Plaintiff's statutory protected rights under the NYSHRL, New York Executive Law § 296, by terminating Plaintiff's employment on the basis of her race.

133.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

134.    As a result of Defendants' unlawful employment practice under the NYSHRL, Plaintiff sustained injury, including economic damages, past and future emotional distress and the costs of bringing this action.

135.    Due to Defendants' violation under the NYSHRL, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices described herein; (2) back pay; and (3) compensatory damages.

## COUNT VIII

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

### (NEW YORK CITY ADMINISTRATIVE CODE § 8-107)

136.    Plaintiff MORINI realleges and reavers Paragraphs 1 through 135 of this class and collective action Complaint as if fully set forth herein.

137.    Defendants have had at all relevant times herein, at least four (4) persons in their employ. Plaintiff is an employee and a qualified person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

138.    Defendants violated Plaintiff MORINI's statutory protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by terminating Plaintiff's employment on the basis of her race.

139.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff MORINI's protected rights under the NYCHRL.

140.    As a result of Defendants' unlawful employment practice under the NYCHRL, Plaintiff MORINI sustained injury, including economic damages, past and future emotional distress and the costs of bringing this action.

141.    Due to Defendants' violation under the NYCHRL, Plaintiff MORINI is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices described herein; (2) back pay; (3) compensatory damages; (4) punitive damages; and (4) attorney's and expert fees and costs.

## COUNT IX

## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

142.    Plaintiff MATINEZ realleges and reavers Paragraph 1 through 141 of this Class and Collective action Complaint as if fully set forth herein.

143.    The FMLA states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S. Code § 2612(a)(1)(d).

144.    Section 2611(11) states in pertinent part: "the term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."

145.    Defendants' actions constitute a violation of Section 2614(c)(1) of the FMLA, which states: "Except as provided in paragraph (2), during any period that an eligible employee takes leave under section 2612 of this title, the employer shall maintain coverage under any "group health plan" (as defined in section 5000(b)(1) of title 26) for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave."

146.    Defendants are subject to the FMLA as a covered employer. Defendants are a covered employer because they employ 50 or more employees for each working day during each of the 10 or more calendar workweeks in the year preceding their violation of Plaintiff Martinez's rights under the FMLA.

147.    Plaintiff Martinez is an eligible employee under the FMLA because she had worked at least 1,250 hours in the 12 months preceding his request for leave. Plaintiff Martinez worked a minimum of 35 hours a week for approximately 52 weeks, making for a total of 1,820 hours.

148.    Defendants willfully violated Plaintiff MARTINEZ's rights under the FMLA by terminating his employment benefits including health insurance, group life insurance and disability insurance.

149.    Plaintiff Martinez seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorney's fees and costs.

## COUNT X

## VIOLATION OF LABOR LAW ON BEHALF OF PLAINTIFF AND CLASS MEMBERS ON A NATIONWIDE BASIS

150.    Plaintiffs reallege Paragraphs 1 through 149 of this Class Action Complaint as if fully set forth herein.

151.    Plaintiffs,, seek to bring this action on behalf of themselves and other similarly situated workers in al 50 States.

152.    Each state has passed labor laws, all of which require employers to pay employees a minimum wage for all hours worked.

153.    At all relevant times, Plaintiffs, and Class members, and Subclass Members were

employed by Defendants within the meaning of their respective States' labor laws and the FLSA.

154.    Defendants willfully violated Plaintiffs, Class Members, and Subclass Members'
rights by failing to pay them wages, including overtime compensation at the statutory rate of
time-and-one-half for all hours worked due to Defendants' policy of time-shaving and rounding.
Defendants willfully violated Plaintiffs', Class Members', and Subclass Members' rights by
failing to reimburse necessary expenses in violation of federal and state laws.

155.    Due to Defendants' Labor Law violations, Plaintiffs, Class Members, and
Subclass Members are entitled to recover from Defendants their unpaid wages due to time-
shaving, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated
damages, statutory penalties, and costs and disbursements of the action, pursuant to Labor Laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs, Class
Members, Subclass Members respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful
under the FLSA and the NYLL;

b.    An injunction against Defendants and their officers, agents, successors,
employees, representatives and any and all persons acting in concert with them as
provided by law, from engaging in each of the unlawful practices, policies and
patterns set forth herein;

c.    An award of damages to Plaintiffs MARTINEZ and MORINI, retroactive to the
date of their discharge and prior, for all lost wages and benefits, past and future,
back and front pay, resulting from Defendants' unlawful employment practices

and to otherwise make their whole for any losses suffered as a result of such unlawful employment practices;

d.  An award of unpaid compensation, including overtime compensation, due to Defendants' policy of requiring unpaid off-the-clock work under the NYLL, and all State Labor Laws;

e.  An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime premium, pursuant to 29 U.S.C. § 216;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wage and wages for off-the-clock work including overtime hours, pursuant to the NYLL, and all state labor laws;

h.  An award of back pay accrued as a result of caused by Defendants' unlawful discriminatory and retaliatory practices under the NYSHRL and NYCHRL;

i.  An award of compensatory damages for emotional suffering as a result of Defendants' unlawful discriminatory and retaliatory practices, under the NYSHRL and NYCHRL;

j.  An award of punitive damages for Defendants' unlawful discriminatory practices under the NYSHRL and NYCHRL;

k.  A declaratory judgment that the practices complained of herein are unlawful and violate the NYSHRL and NYCHRL;

l.   An order directing Defendants to take steps as may be necessary to prevent and remedy employment discrimination and the patterns or practices of discrimination in employment identified above;

m.   An award for compensatory and punitive damages due to Defendants' breach of contract;

n.   An award for compensatory and punitive damages due to Defendants' promissory fraud and negligent misrepresentations;

o.   An award for disgorgement and compensation due to Defendants' unjust enrichment;

p.   An award for compensatory and punitive damages due to beach of the covenants of good faith and fair dealing;

q.   An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

r.   Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

s.   Designation of this action as a class action pursuant to F.R.C.P. 23;

t.   Designation of Plaintiffs as Representatives of Class; and

u.   Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated:  May 20, 2021

Respectfully submitted,

By:    */s/ C.K. Lee*                     

C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiff and the Class*